## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

HOUSING AND
REDEVELOPMENT
INSURANCE EXCHANGE,

      Plaintiff,

      v.

GUY CARPENTER & COMPANY,
LLC,

      Defendant.

CIVIL ACTION NO. 3:23-CV-0996

(SAPORITO, C.M.J.)

## MEMORANDUM

This matter comes before the court on a motion by the defendant to dismiss or transfer this diversity action pursuant to a contractual forum-selection clause. Doc. 11. The motion is fully briefed and ripe for decision. *See* Doc. 11; Doc. 12; Doc. 14.

## I. BACKGROUND

The plaintiff, Housing and Redevelopment Insurance Exchange ("HARIE"), is a non-profit reciprocal insurance exchange organized under the laws of Pennsylvania, which maintains its principal place of business there as well. HARIE provides insurance coverage exclusively to public housing and redevelopment authorities and other municipal entities in

Pennsylvania. In order to safeguard its ability to meet its insureds' needs and provide prompt claim payment, HARIE obtains reinsurance for certain lines of insurance that it underwrites, including property and casualty, workers compensation, and various other monoline coverage lines. *See generally N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1198–1200 (3d Cir. 1995) (providing an overview of how reinsurance coverage functions).

The defendant, Guy Carpenter & Company, LLC ("Guy Carpenter"), is a single-member limited liability company organized under the laws of Delaware, which maintains its principal place of business in New York. Guy Carpenter's sole member, Marsh U.S.A., Inc., is a Delaware corporation with its principal place of business in New York as well. Guy Carpenter is a reinsurance intermediary, responsible for locating, negotiating, and placing treaty reinsurance contracts on behalf of a reinsured, and for administering the reinsurance program thereafter, all in exchange for a brokerage fee, which is paid out of the premium ceded from reinsured to reinsurer. *See generally id.*

In December 2009, HARIE first selected Guy Carpenter to serve as its reinsurance intermediary and broker of record, entering into a

Reinsurance Intermediary Authorization contract effective December 10, 2009.[1] This original contract governing the parties' relationship, however, was superseded several years later, when HARIE and Guy Carpenter executed an Amended and Restated Reinsurance Intermediary Authorization contract effective August 17, 2016 (the "Amended RIA").[2] The Amended RIA expressly provided that it contained "the entire agreement and understanding of the Parties and supersede[d] all prior negotiations and oral statements related thereto." Am. RIA § XII(A). The Amended RIA further provided that it could only be amended, altered, or modified by written amendment executed by both parties. *Id.* § XII(B). The Amended RIA did not contain a choice of law or forum-selection clause. The Amended RIA expressly provided that the contract was "at will," with an indefinite term, and it permitted either party to terminate the agreement at any time by written notice. *Id.* § VIII(A).

Under the Amended RIA, Guy Carpenter served as a reinsurance intermediary and broker of record for HARIE, responsible for locating, negotiating, and placing treaty reinsurance contracts on behalf of

---

[1] Pl.'s Ex. 1, Doc. 12-2.
[2] Pl.'s Ex. 2, Doc. 12-3; Def.'s Ex. 3, Doc. 11-1, at 38–45.

HARIE, and for administering HARIE's reinsurance program, including handling of the payments of premiums and losses thereunder. In this latter capacity, the parties expressly agreed that all funds owed or due to HARIE from its reinsurers would be collected and held by Guy Carpenter in a fiduciary capacity, deposited in a qualified U.S. financial institution, and remitted by Guy Carpenter to HARIE within 30 days of receipt. *See id.* § IV.

From the inception of the parties' contractual relationship in 2009 through the end of 2019, Peter Taubenheim served as HARIE's principal contact at Guy Carpenter. In 2019, Taubenheim announced his retirement from Guy Carpenter, effective at year's end. In an effort to entice HARIE to not terminate the Amended RIA, Guy Carpenter agreed to reduce the brokerage fee it earned for procuring or administering reinsurance contracts over a fixed three-year term, with an understanding that Taubenheim would continue to serve in a consultant role, and this reduction in brokerage fees would be used by HARIE to pay his consulting fees.

To memorialize the terms of this agreement, Guy Carpenter drafted a separate three-page letter agreement entitled "Broker Services

Agreement," dated and signed by a representative of Guy Carpenter on April 14, 2020, and countersigned by a representative of HARIE on June 15, 2020 (the "BSA").[3] The BSA provided that it was effective for a term of three years, beginning January 1, 2020, and continuing through December 31, 2022. BSA 1. During this term, the brokerage fees owed to Guy Carpenter by HARIE were to be reduced by a "BSA Retention" of twenty percent. *Id.* HARIE's entitlement to this BSA Retention, however, was conditioned upon its continued brokerage relationship with Guy Carpenter. In the event that HARIE terminated Guy Carpenter as its broker of record with respect to any given reinsurance treaty while in force or upon renewal, the BSA provided that the brokerage fees for that reinsurance treaty would be excluded from the BSA Retention calculation. *Id.* at 2. Moreover, if HARIE terminated Guy Carpenter as broker of record with respect to fifty percent or more of its in-force reinsurance treaties prior to expiration of the BSA's three-year term, the BSA provided that *all* BSA Retentions accrued over the twelve months preceding such termination would be forfeited to Guy Carpenter. *Id.* The BSA contained a choice of law provision, providing that the BSA "shall be

---

[3] Def.'s Ex. 1, Doc. 11-1, at 3–10.

governed by and construed in accordance with the laws of the State of New York." *Id.* at 3. It also contained a forum-selection clause, which stated: "The parties hereby agree to the exclusive jurisdiction of the Supreme Court of the State of New York, New York County, or the Southern District of New York federal district court, for the resolution of any disputes raising issues regarding the construction, meaning or enforcement of the terms of this agreement." *Id.*

HARIE continued to use Guy Carpenter as its reinsurance intermediary and broker of record through the end of calendar year 2022. As the BSA had contemplated, the BSA Retentions were used to retain Taubenheim as a consultant.

In late 2022, HARIE solicited requests for proposals from qualified reinsurance intermediaries for placing and administering HARIE's reinsurance coverage in 2023. Guy Carpenter was one of several reinsurance intermediaries invited to submit a proposal. Ultimately, however, HARIE selected a different company—McGill Global Risk Solutions LLC ("McGill")—to serve as its reinsurance intermediary and broker of record with respect to reinsurance coverage beginning January 1, 2023.

On November 30, 2022, HARIE provided Guy Carpenter with written notice that McGill would serve as HARIE's reinsurance intermediary and broker of record with respect to reinsurance placed on or after January 1, 2023.[4] The November 30, 2022, letter, however, also expressly confirmed that Guy Carpenter would remain broker of record responsible for servicing reinsurance treaties it had previously procured for HARIE.

On December 22, 2022, Guy Carpenter wrote to advise HARIE that it had deducted $101,646.20 from the fiduciary account it held on behalf of HARIE, and paid that amount over to itself, contending that the funds represented BSA Retention for the 2022 calendar year, which had been forfeited by HARIE upon termination of Guy Carpenter as broker of record, pursuant to the BSA. In response, HARIE contended that this deduction was not authorized under either the Amended RIA or the BSA, and it demanded that the funds be remitted to HARIE. Guy Carpenter refused.

After an exchange of written correspondence by the parties and their lawyers, HARIE commenced this action. In its six-count complaint,

---

[4] Def.'s Ex. 4, Doc. 11-1, at 46–47.

HARIE asserts state-law claims for breach of contract, conversion, breach of fiduciary duty, unjust enrichment, fraudulent inducement, and misrepresentation. Based on the forum-selection clause in the BSA, Guy Carpenter has moved to dismiss this action or transfer it to the United States District Court for the Southern District of New York.

## II.   DISMISSAL ON *FORUM NON CONVENIENS* GROUNDS

The defendant's preferred relief is dismissal under the common law doctrine of *forum non conveniens*. The Supreme Court of the United States has identified the common law doctrine of *forum non conveniens* as "the appropriate way to enforce a forum-selection clause pointing to a *state or foreign* forum." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 60 (2013) (emphasis added); *see also Collins v. Mary Kay, Inc.*, 874 F.3d 176, 180 (3d Cir. 2017) ("*Atlantic Marine* clarified that *forum non conveniens* is the proper mechanism for enforcing a forum selection clause that points to a *state or foreign* forum.") (emphasis added).

But the forum-selection clause at issue here specifically provides that a covered dispute be brought in *either* the New York state trial court situated in Manhattan, New York, *or* the United States District Court for the Southern District of New York. Dismissal under the doctrine of *forum*

*non conveniens* is not appropriate in federal cases where the alternative forum is another federal district court; instead, the appropriate remedy is a transfer under 28 U.S.C. § 1404(a). *See Atl. Marine*, 571 U.S. at 61 ("[F]ederal courts invoke *forum non conveniens* in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best.") (internal quotation marks omitted); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 24, 28–32 (1988) (holding that § 1404(a) governed a similar dispute); *Ravelo Monegro v. Rosa*, 211 F.3d 509, 512–13 (9th Cir. 2000) ("Section 1404(a) . . . serves as a statutory substitute for *forum non conveniens* in federal court when the alternative forum is within the territory of the United States.").

Accordingly, to the extent it seeks dismissal of this action on *forum non conveniens* grounds, the defendant's motion will be denied.

## III.   TRANSFER UNDER SECTION 1404(A)

In the alternative, the defendant requests that this case be transferred to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). *See generally Atl. Marine*, 571 U.S. at 59 ("Section 1404(a) . . . provides a mechanism for

enforcement of forum-selection clauses that point to a particular federal district."). The plaintiff opposes transfer, arguing that its claims arise out of the Amended RIA only and thus fall outside the scope of the BSA forum-selection clause.

"Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to another district where the case might have been brought, or to which the parties have consented, for the convenience of the parties and witnesses and in the interest of justice." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018). In deciding a § 1404(a) motion to transfer, "the Court may properly consider only those facts which are undisputed or are a matter of record in the form of affidavits, depositions, stipulations, or other documents. Mere allegations cannot be taken as proof of the facts alleged in support of the motion." *Kisko v. Penn Cent. Transp. Co.*, 408 F. Supp. 984, 986 (M.D. Pa. 1976) (citation omitted); *see also Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 & n.2 (3d Cir. 1973); *Bombin v. Sw. Airlines Co.*, 529 F. Supp. 3d 411, 417 (E.D. Pa. 2021). Generally, "[t]he § 1404(a) movant bears the burden of persuasion." *McGraw-Hill*, 909 F.3d at 57; *see also Plum Tree*, 488 F.2d at 756; *Kisko*, 408 F. Supp. at 986. *But see Atl. Marine*, 571 U.S. at 63,

67 (holding that, once a valid forum-selection clause is found to apply, it is the plaintiff, as the party defying the forum-selection clause, who bears the burden of showing that public-interest factors overwhelmingly disfavor a transfer).

"A motion to transfer venue is appropriate where, as here, a party invokes a forum-selection clause." *Bombin*, 529 F. Supp. 3d at 416. "Ordinarily, in a case not involving a forum selection clause, a court evaluates a § 1404(a) motion using such factors as the convenience of the parties and the relevant public interests." *Mathias v. Caterpillar, Inc.*, 203 F. Supp. 3d 57, 574 (E.D. Pa. 2016); *see also Atl. Marine*, 571 U.S. at 62, 63 n.6 (listing private and public interest factors). "In *Atlantic Marine*, however, the Supreme Court explained that the presence of a forum-selection clause alters the traditional analysis in several respects." *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 96 (3d Cir. 2018); *McGraw-Hill*, 909 F.3d at 57.

> In the face of a valid forum selection clause, a district court modifies its analysis in three ways. First, no weight is given to the plaintiff's choice of forum. Second, the court does not consider arguments about the parties' private interests. Instead, "a district court may consider arguments about public-interest factors only." Third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in

> a different forum, a § 1404(a) transfer of venue will not
> carry with it the original venue's choice-of-law rules—
> a factor that in some circumstances may affect public-
> interest considerations.

*McGraw-Hill*, 909 F.3d at 57 (quoting *Atl. Marine*, 571 U.S. at 63–64)

(citations omitted); *see also Reading Health*, 900 F.3d at 96. "As a result,

when a court is confronted with a valid forum-selection clause that covers

the dispute, it must consider only the public-interest factors and 'deem

the private-interest factors to weigh entirely in favor of the preselected

forum.'" *Reading Health*, 900 F.3d at 96–97 (quoting *Atl. Marine*, 571

U.S. at 64); *see also Atl. Marine*, 571 U.S. at 64 ("As a consequence, a

district court may consider arguments about public-interest factors

only."). "[B]ecause the public interest factors—the only factors that

remain to be balanced—'will rarely defeat a transfer motion, the practical

result is that forum-selection clauses should control except in unusual

cases.'" *McGraw-Hill*, 909 F.3d at 57–58 (quoting *Atl. Marine*, 571 U.S. at

64); *see also Atl. Marine*, 571 U.S. at 63, 67 (holding that, once a valid

forum-selection clause is found to apply, it is the plaintiff, as the party

defying the forum-selection clause, who bears the burden of showing that

public-interest factors overwhelmingly disfavor a transfer).

    Under the *Altantic Marine* framework, "courts conduct a two-part

analysis when deciding whether to enforce a forum-selection clause." *Mathias*, 203 F. Supp. 3d at 575 & n.3; *see also Silvis v. Ambit Energy, L.P.*, 90 F. Supp. 3d 393, 397 & n.3 (E.D. Pa. 2015). "First, a district court must determine whether the forum-selection clause is valid and enforceable." *Bombin*, 529 F. Supp. 3d at 416; *Mathias*, 203 F. Supp. 3d at 575; *Silvis*, 90 F. Supp. 3d at 397. "Second, a court must consider whether, pursuant to § 1404(a), 'extraordinary circumstances' militate against enforcing the forum-selection clause." *Bombin*, 529 F. Supp. 3d at 416–17; *Mathias*, 203 F. Supp. 3d at 575; *Silvis*, 90 F. Supp. 3d at 397.

Here, the plaintiff's opposition is focused on the first step of this analysis, arguing that its claims fall outside the scope of the BSA forum-selection clause. Although federal law controls the second step of the analysis—whether to enforce a forum-selection clause—it is state contract law that governs interpretation of a forum-selection clause's scope. *See McGraw-Hill*, 909 F.3d at 58; *Reading Health*, 900 F.3d at 98 & n.48; *Collins*, 874 F.3d at 180–82; *Bombin*, 529 F. Supp. 3d at 417.[5]

---

[5] We note that there appears to be a circuit split on this point. While the Third Circuit has held that the scope of a forum-selection clause is interpreted using state contract law, the Ninth Circuit has adopted the opposite position. *See, e.g.*, *Sun v. Adv. China Healthcare, Inc.*, 901 F.3d

*(continued on next page)*

"Parties are generally free to specify which law governs a contract's interpretation, and may agree to modify the choice specified in the contract." *McGraw-Hill*, 909 F.3d at 58. The BSA forum-selection clause includes a choice of law provision specifying the laws of the State of New York. BSA 3. Guy Carpenter contends that New York state contract law controls the interpretation of the forum-selection clause. *See* Supp. Br. 13–14, Doc. 11; *see also* Reply Br. 9, 14 n.4 (relying on New York substantive law), Doc. 14. HARIE does not expressly concede this point, but merely assumes *arguendo* that New York state contract law applies. *See* Opp'n Br. 19–20, Doc. 12. HARIE does not identify any conflict between New York state law and Pennsylvania state law that would affect interpretation of the forum-selection clause at issue here, and HARIE does not affirmatively argue that New York state law is inapplicable.[6] To determine which state law governs interpretation of the

_____

1081, 1086 (9th Cir. 2018) ("We apply federal contract law to interpret the scope of a forum-selection clause even in diversity actions . . . .").

[6] We note that, in support of its argument regarding interpretation of the scope of the BSA forum-selection clause, HARIE relies on several pre-*Atlantic Marine* cases from various jurisdictions, most of which do not indicate what substantive body of law was applied in interpreting the forum-selection clause in each case. *See Mozingo v. Trend Pers. Servs.*, 51 Empl. Benefits Cas. (BL) 2486, 2011 WL 2038716 (D. Kan. May 25, 2011)

*(continued on next page)*

(relying on general contract principles to interpret forum-selection clause designating a certain Texas state court as exclusive forum for "any dispute relating to or arising out of" employment agreement, and finding under facts presented that a Kansas action asserting ERISA claims and breach of an employment separation agreement executed upon termination was outside the scope of that clause); *Jayson Co. v. Vertical Mkt. Software*, No. 05-3883, 2006 WL 1374039 (D.N.J. May 18, 2006) (relying on general contract principles to interpret forum-selection clause designating certain Florida state or federal courts as exclusive forums for action "arising from or incident to" a licensing agreement for standard software, and finding under facts presented that a New Jersey action for breach of a separate contract to provide custom software modifications was outside scope of that clause); *Nat'l Union Fire Ins. Co. of Pittsburgh v. United Transp. Union Ins. Ass'n*, No. H-05-4159, 2006 WL 456267 (S.D. Tex. Feb. 23, 2006) (relying on general contract principles to interpret forum-selection clause designating Ohio state courts as exclusive forum for claims "in respect of" undertaking agreement between defendant-insured and a non-party corporate director of the defendant, and finding under facts presented that a Texas action brought by insurer for reimbursement of legal fees advanced to the non-party director pursuant to a separate liability insurance policy issued by plaintiff-insurer to defendant-insured was outside the scope of that clause); *Toner v. Miller*, No. 03-3498, 2003 WL 22358446 (E.D. Pa. Sept. 8, 2003) (relying on general contract principles to interpret a forum-selection clause designating Ohio state or federal courts as exclusive forums for action "arising out of or relating to" a confidentiality agreement, and finding under facts presented that a Pennsylvania action for breach of a separate management contract was outside scope of that clause).

The plaintiff also cites a Third Circuit case, *Cottman Transmission Sys. v. Martino*, 36 F.3d 291 (3d Cir. 1994), which did not involve interpretation of the scope of a forum-selection clause because the contract at issue in *Cottman* did not include one—the only mention of a forum-selection clause was in the opinion's fact summary, which noted that this case had been consolidated in the trial court with other similar cases involving contracts that did include a forum-selection clause.

The plaintiff cites a case from a federal district court seated within

*(continued on next page)*

scope of the BSA forum-selection clause, we look to the choice of law rules of Pennsylvania—the state in which this court sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Collins*, 874 F.3d at 183. Pennsylvania courts generally give effect to contractual choice of law provisions. *See Gay v. CreditInform*, 511 F.3d 369, 389–90 (3d Cir. 2007); *Smith v. Commonwealth Nat'l Bank*, 557 A.2d 775, 777 (Pa. Super. Ct. 1989). Thus, in the absence of any argument to the contrary, we will honor the parties' choice of law selection in the BSA and apply New York law to interpret the scope of its forum-selection clause. To the extent we have found it persuasive and not contrary to controlling New York law, however, we rely as well on federal case law applying general principles

---

the Ninth Circuit, *Sterling Int'l, Inc. v. Virtools Canada, Inc.*, No. CV-06-0059, 2006 WL 2035515 (E.D. Wash. July 18, 2006), which applied *federal* contract law to interpret the scope of a forum-selection clause between a Washington State company and a Canadian company, making it inapposite here. *See supra* note 5.

Finally, the plaintiff cites one post-*Atlantic Marine* decision by the Third Circuit, *Reading Health*, in which the parties to an action brought in a Pennsylvania federal court were found to have waived any choice-of-law issue by failing to address it in their briefs and by relying on cases applying different bodies of law to interpret the scope of a forum-selection clause designating a certain New York federal district court as the exclusive forum for an action "arising out of" a broker-dealer agreement. Notwithstanding the noncommittal resolution of this issue in *Reading Health*, we have considered the case as persuasive authority and address it in our analysis below.

of contract law to interpret forum-selection clauses. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 223 (2d Cir. 2014) ("This Court has . . . at times cited federal law in interpreting a forum selection clause, even where the contract at issue also contained a choice-of-law clause."); *Bent v. Zounds Hearing Franchising, LLC*, No. 15 Civ. 6555, 2015 WL 7721838, at *4 n.3 (S.D.N.Y. Nov. 30, 2015) ("[W]here the parties do not urge the application of any specific element of the contractually chosen body of law to govern the interpretation of the forum-selection clause, it is appropriate for the court not to rely on any distinctive features of the selected law and instead to apply general contract law principles and federal precedent to discern the meaning and scope of the forum clause.") (brackets and internal quotation marks omitted); *see also Reyes v. City of New York*, No. 23-CV-6369, 2023 WL 7212192, at *4 (S.D.N.Y. Nov. 2, 2023), *appeal filed*, No. 23-7640 (2d Cir. Nov. 3, 2023); *Cox v. Microsoft Corp.*, 737 N.Y.S.2d 1, 2 (N.Y. App. Div. 2002); *Lenox Hill Radiology v. N.Y. Cent. Mut. Fire Ins. Co.*, 863 N.Y.S.2d 332, 337 (N.Y. Dist. Ct. 2008).

"A court considering the interpretation of a forum selection clause applies principles of contract law to determine the scope of the clause. In other words, it decides whether the claims and parties involved in the

suit are subject to the clause." *Collins*, 874 F.3d at 180 (citation and internal quotation marks omitted). "We interpret a forum selection clause in accordance with its plain meaning." *McGraw-Hill*, 909 F.3d at 67; *see also Couvertier ex rel. Couvertier v. Concourse Rehab. & Nursing, Inc.*, 985 N.Y.S.2d 683, 684 (N.Y. App. Div. 2014) ("[I]t is the language of the forum selection clause itself that determines which claims fall within its scope.").

The gist of HARIE's complaint is that Guy Carpenter deducted $101,646.20 from the fiduciary account it held on behalf of HARIE pursuant to the Amended RIA and paid that amount over to itself, without authorization. HARIE asserts various contract, tort, and equitable causes of action arising out of this conduct by Guy Carpenter. In response, Guy Carpenter contends that it was authorized to deduct this amount and pay it over to itself under the terms of the BSA, which provided that some portion of the BSA Retention would be forfeited to Guy Carpenter in the event that HARIE terminated Guy Carpenter as its broker of record with respect to reinsurance treaties in force or upon renewal. Guy Carpenter contends that this civil action falls within the scope of the BSA forum-selection clause because this defense "rais[es]

issues regarding the construction, meaning or enforcement of the terms of" the BSA. On the other hand, HARIE contends that the action falls outside the scope of the BSA forum-selection clause because its *claims* are based solely on the Amended RIA, not the BSA.

"The answer to the question whether a 'defense' based on a contract that contains a forum selection clause implicates that clause depends on the language of that clause." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 (3d Cir. 1997); *Reading Health*, 900 F.3d at 100 (quoting *Wyeth*, 119 F.3d at 1076). The forum-selection clause in the BSA provides that "any disputes raising issues regarding the construction, meaning or enforcement of the terms of" the BSA must be litigated in the New York state trial court situated in Manhattan, New York, or the United States District Court for the Southern District of New York. The term "dispute" has been construed as being broader than the term "claim." *McGraw-Hill*, 909 F.3d at 67; *Wyeth*, 119 F.3d at 1074; *see also Stein v. United Wind, Inc.*, No. 602032-20, 2021 WL 479878, at *2 (N.Y. Sup. Ct. Feb. 8, 2021) (broadly construing scope of forum-selection clause using phrase "any dispute in connection with" written instrument to include "all actions regarding [the parties'] relationship"). Indeed, the

Third Circuit has expressly held that "the word 'disputes' allows the contract to be implicated by way of an affirmative defense." *McGraw-Hill*, 909 F.3d at 67 (considering transfer of a case from Pennsylvania federal court to New York federal court pursuant to forum-selection clause); *see also CleanSpark, Inc. v. Discover Growth Fund, LLC*, 485 F. Supp. 3d 494, 502 (S.D.N.Y. 2020) (applying New York law and noting that "broad forum selection clauses can apply to claims where the contract is relevant as a defense" and finding that forum-selection clause providing that "any dispute . . . in connection" with a contract was such a clause). Moreover, the term "regarding" has been construed as being broader than the phrases "arising under," "arising out of," or "arising in relation to." *McGraw-Hill*, 909 F.3d at 68; *see also Flanagan v. Prudential-Bache Sec., Inc.*, 495 N.E.2d 345, 350 (N.Y. 1986) (holding that "respecting," "regarding," or "concerning" have broader connotation than "arising out of"). The term "regarding" has been found to "be equated with 'relates to,' a phrase . . . define[d] as having some 'logical or causal connection.'" *McGraw-Hill*, 909 F.3d at 68.[7]

---

[7] The plaintiff has relied heavily on the Third Circuit's decision in *Reading Health*, which also involved consideration of a transfer from *(continued on next page)*

Here, the dispute between HARIE and Guy Carpenter have a clear logical and causal connection to the BSA. The core of the parties' dispute is whether Guy Carpenter's deduction and retention of funds from HARIE's fiduciary account was authorized. HARIE argues that it was not authorized to do so under the Amended RIA *or* the BSA. Guy Carpenter argues that it was authorized to do so under the terms of the BSA concerning forfeiture of the BSA Retention, a provision it claims was triggered by Guy Carpenter's termination as broker of record with respect to renewal of reinsurance treaties for the 2023 calendar year. Although the plaintiff's claims are not themselves based on the terms of the BSA, to ultimately determine Guy Carpenter's liability, the court would have to consider the construction and meaning of the BSA with

---

Pennsylvania federal court to New York federal court pursuant to a forum-selection clause. In *Reading Health*, the Third Circuit "rejected the argument that a contractual defense alone is sufficient to bring the dispute within the scope of" a forum-selection clause that "encompasses only disputes 'arising out of' the contract." *Reading Health*, 900 F.3d at 100. But *Reading Health* is inapposite on this point, because the language of the forum-selection clause at issue in *Reading Health* was substantially narrower than the language of the forum-selection clause at issue in this case. *See Wyeth*, 119 F.3d at 1075 ("Drawing analogy to other cases is useful only to the extent those other cases address contract language that is the same or substantially similar to that at issue."); *see also Reading Health*, 900 F.3d at 98 (quoting *Wyeth*, 119 F.3d at 1075). *McGraw-Hill* provides the better analogue.

respect to the BSA Retention. Thus, it is clear that the "dispute" between the parties indeed "rais[es] issues regarding the construction, meaning or enforcement of the terms of" the BSA.

Accordingly, we find that this diversity action is a "dispute[] raising issues regarding the construction, meaning or enforcement of the terms of" the BSA, and thus, this action falls within the scope of the BSA's forum-selection clause. In the absence of any other challenge to the validity or enforceability of the forum-selection clause, we proceed then to the second step of the *Atlantic Marine* analysis.

Having found that a valid forum-selection clause covers this dispute, we deem the § 1404(a) private-interest factors to weigh entirely in favor of transfer to the Southern District of New York. *See Atl. Marine*, 571 U.S. at 64; *McGraw-Hill*, 909 F.3d at 57–58; *Reading Health*, 900 F.3d at 96–97. We turn then to consider the public-interest factors. *See Atl. Marine*, 571 U.S. at 62 n.6 ("Public interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law.") (brackets and internal quotation marks omitted). As the

Supreme Court has underscored, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* at 63 (brackets omitted). Thus, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63; *see also id.* at 67 (holding that district court had improperly placed the burden on the defendant to prove that transfer to the parties' contractually preselected forum was appropriate).

The defendant points to statistics indicating that civil cases in the Southern District of New York have a somewhat shorter median time from filing to disposition than in the Middle District of Pennsylvania—about six months' difference—but we find little difference in the overall caseloads of the two courts. *See* Supp. Br. 11 & n.8; Def.'s Ex. 5, Doc. 11-1. The plaintiff has not addressed this factor in its brief. We find that court congestion is not a significant concern in either forum, so this factor is neutral.

The plaintiff argues that the local interest factor favors a Pennsylvania forum, noting that HARIE exclusively insures municipal entities within Pennsylvania. *See* Opp'n Br. 21 (citing *City of*

*Philadelphia v. U.S. Gypsum Co.*, No. 3240, 1991 WL 1011059, at \*25 (Philadelphia Cnty. (Pa.) C.C.P. Aug. 22, 1991) (noting that Pennsylvania public policy favors bringing an action against a political subdivision in the county where it is located)). But HARIE itself is not a municipality; its customer-members are municipalities. Moreover, as the defendant argues in its supporting brief, *see* Supp. Br. 19–20, the central facts of this case occurred in New York: Guy Carpenter's offices are located there; the fiduciary account was maintained there; the allegedly improper withdrawal from that account occurred there; and the account itself is governed by New York reinsurance intermediary regulations.[8] *See Dariz v. Republic Airline Inc.*, 377 F. Supp. 3d 499, 505 (E.D. Pa. 2019). We find that, on balance, the local interest factor slightly favors transfer to a New York forum.

The defendant notes that the BSA is governed by New York law, as we have found above as well. *See* Supp. Br. 19. The plaintiff has not addressed this factor in its brief. We find that the interest in having trial

---

[8] *See, e.g.*, N.Y. Comp. Codes R. & Regs. tit. 11, § 32.3(3) (providing that a reinsurance intermediary, serving as a fiduciary, is permitted to withdraw the intermediary's commissions from the premium and loss account of the reinsured).

of a diversity case in a forum that matches the law that governs the case clearly favors transfer to a New York forum.

The plaintiff has failed to establish that these public-interest factors overwhelmingly disfavor a transfer.

Accordingly, under the circumstances presented, we find that, pursuant to the BSA forum-selection clause, a  transfer of this action to the United States District Court for the Southern District of New York is warranted. Therefore, to the extent it seeks the transfer of this action under 28 U.S.C. § 1404(a), the defendant's motion will be granted.

## IV.    REQUEST FOR AWARD OF ATTORNEY FEES

In its motion papers, the defendant has also requested that it be awarded reasonable attorney fees as damages for breach of the BSA forum-selection clause. *See* Supp. Br. 20–21. The plaintiff opposes this request. *See* Opp'n Br. 21.

Guy Carpenter's claim for attorney fees is not a request for sanctions under the federal rules. *See, e.g.*, Fed. R. Civ. P. 37(a)(5). Nor is it a claim for fees as a component of costs awarded under a federal cost-shifting statute. *See, e.g.*, 42 U.S.C. § 1988(b). Rather, Guy Carpenter's claim is a substantive state-law damages claim for breach of contract

based on a forum-selection clause, in which attorney fees are an element of damages. *See* Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."); *Grand Union Co. v. Cord Meyer Dev. Co.*, 761 F.2d 141, 147 (2d Cir. 1985) ("The awarding of attorneys' fees in diversity cases such as this is governed by state law . . . ."). Such a claim must be brought by counterclaim or by separate action for breach of contract. *See, e.g.*, *Wormser Corp. v. L'Oréal USA, Inc.*, 205 A.D.3d 496, 497 (N.Y. App. Div. 2022) (reversing dismissal of civil complaint that asserted breach of contract based on forum-selection clause); *Indosuez Int'l Fin., B.V. v. Nat'l Rsrv. Bank*, 758 N.Y.S.2d 308, 311 (N.Y. App. Div. 2003) (affirming denial of motion to dismiss civil complaint that asserted breach of contract based on forum-selection clause); *see also John Wiley & Sons, Inc. v. Book Dog Books, LLC*, No. 13 Civ. 816, 2015 WL 4154112, at *10 (S.D.N.Y. July 10, 2015) (recognizing "a split in case law as to whether a party can recover attorney's fees for breach of a forum selection clause under New York law").

Accordingly, to the extent it requests an award of attorney fees as

damages for breach of the BSA forum-selection clause, the defendant's motion will be denied.

## V.  CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss or transfer this diversity action pursuant to a contractual forum-selection clause (Doc. 11) will be granted in part and denied in part. The motion will be granted with respect to the defendant's request that this action be transferred to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). The motion will be denied with respect to the defendant's requests that this action be dismissed on *forum non conveniens* grounds and that the defendant be awarded attorney fees as damages for the plaintiff's breach of the BSA forum-selection clause.

An appropriate order follows.

Dated: March 25, 2024          *s/Joseph F. Saporito, Jr.*
                              JOSEPH F. SAPORITO, JR.
                              Chief United States Magistrate Judge