USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/28/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HOUSING AND REDEVELOPMENT
INSURANCE EXCHANGE,

                Plaintiff,

        -against-

GUY CARPENTER & COMPANY, LLC,

                Defendant.

1:24-cv-02412 (MKV)

**OPINION AND ORDER
GRANTING IN PART AND DENYING
IN PART
MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Housing and Redevelopment Insurance Exchange ("Plaintiff" or "HARIE") brings this action against Defendant Guy Carpenter & Company, LLC ("Defendant" or "Guy Carpenter"), asserting claims for breach of contract, unjust enrichment, conversion, breach of fiduciary duty, fraudulent inducement, and misrepresentation. Before the Court is a Motion to Dismiss the Second Amended Complaint ([ECF No. 40], the "Sec. Amend. Compl.") in its entirety, or in the alternative, a Motion to Strike Plaintiff's demand for punitive and consequential damages. [ECF No. 44].

**BACKGROUND[1]**

I.     **Facts**

Plaintiff is a non-profit reciprocal insurance exchange with a principal place of business in Pennsylvania that provides low-cost insurance for governmental entities, including housing and redevelopment authorities in Pennsylvania. Sec. Amend. Compl. ¶ 2, 7. In 2009, Plaintiff selected Defendant to serve as its reinsurance intermediary and broker of record, and the parties executed

---

[1] The facts are taken from the Second Amended Complaint and are accepted as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

a contract, the "Reinsurance Intermediary Authorization," to that effect.  Sec. Amend. Compl. ¶ 18.  In 2016, the parties amended and superseded the contract with the "Authorization Contract."  Sec. Amend. Compl. ¶¶ 19–20.  The Authorization Contract provided that Defendant would act as Plaintiff's reinsurance intermediary, and would collect and hold "all funds owed and due to" Plaintiff in a "fiduciary capacity," remit them to Plaintiff "within 30 days of receipt," and provide necessary accounting on a monthly basis.  Sec. Amend. Compl. ¶¶ 21, 22.

Over the course of the parties' contractual relationship, Plaintiff's primary contact with Defendant was Mr. Taubenheim.  Sec. Amend. Compl. ¶ 31.  When Mr. Taubenheim announced his retirement from Defendant in 2020, Plaintiff "began exploring hiring a new reinsurance intermediary."  Sec. Amend. Compl. ¶¶ 32, 33.  Plaintiff alleges that during this time, Defendant "offered to reduce its [broker's fee]" if Plaintiff "continued to use [Defendant] as its reinsurance intermediary for an additional three years."  Sec. Amend. Compl. ¶ 34.  Plaintiff and Defendant subsequently entered a Broker Services Agreement ("BSA").  Sec. Amend. Compl. ¶ 36.  The BSA did not terminate or supersede the Authorization Contract, but supplemented it with respect to "certain aspects" of the parties' relationship.  Sec. Amend. Compl. ¶¶ 39–40.  Specifically, the BSA facilitated the hiring of Mr. Taubenheim as a consultant, Sec. Amend. Compl. ¶¶ 40, 72, and thus required Defendant to "give twenty percent (20%) of its brokerage from Treaties incepting during the term to [Plaintiff]."  Sec. Amend. Compl. ¶ 43.  Plaintiff in turn paid this 20% to Mr. Taubenheim for his consultation service.  Sec. Amend. Compl. ¶ 70.  The 20% brokerage that was to be returned to Plaintiff for payment to Taubenheim was defined in the BSA as the "BSA retention."  Sec. Amend. Compl. ¶ 43.

Section D of the BSA also provided that "in the event [Plaintiff] terminate[s] [Defendant] as [the] broker of record with respect to the renewal of any Treaty previously placed by

2

[Defendant,] all brokerage earned by [Defendant] from the existing Treaty shall be excluded from the calculation [of] the BSA Retention otherwise due hereunder." Sec. Amend. Compl. ¶ 60. Plaintiff alleges that the terms of the BSA were effective for the periods "January 1, 2020 – December 31, 2020, January 1, 2021 – December 31, 2021, and January 1, 2022 – December 31, 2022 (each a 'Calendar Year')." Sec. Amend. Compl. ¶ 42.

In late 2022, Plaintiff notified Defendant that it intended to solicit proposals for reinsurance intermediaries for the 2023 procurement period. Sec. Amend. Compl. ¶ 46. Subsequently, Defendant submitted a proposal, but was not selected. Sec. Amend. Compl. ¶¶ 50–51. Plaintiff advised Defendant on November 30, 2022 (the "McGill Letter"), that it had chosen a new reinsurance intermediary, McGill Global Risk Solutions ("McGill"), to replace Defendant for the 2023 procurement period. Sec. Amend. Compl. ¶¶ 52–53. Plaintiff alleges that Defendant remained the broker of record for the Treaties placed during the 2022 procurement period, and then on December 31, 2022, the BSA expired by its own terms. Sec. Amend. Compl. ¶ 55.

Plaintiff further alleges that Defendant was required to remit all funds it held on behalf of Plaintiff. *Id.* Plaintiff claims that, instead, on December 22, 2022, Defendant advised Plaintiff that it unilaterally withdrew $101,646.20 from the fiduciary account and claimed it was "entitled to withhold the BSA Retention payments that it owed to [Plaintiff] under the Treaties procured in 2022" because Plaintiff terminated Defendant under Section D of the BSA. Sec. Amend. Compl. ¶¶ 56–58. Plaintiff claims that it "never terminated Defendant as its broker of record for the Term governed by the BSA," and therefore, Defendant was not entitled to withhold the BSA retentions. Sec. Amend. Compl. ¶ 61. Plaintiff alleges that Defendant breached the Authorization Contract by unilaterally withdrawing and retaining the 20% brokerage held in the fiduciary account.

Plaintiff also asserts claims for unjust enrichment, conversion, breach of fiduciary duty, fraudulent inducement and misrepresentation.

## II.      Procedural History

Plaintiff initiated this action by filing a complaint in U.S. District Court in the Middle District of Pennsylvania. [ECF No. 1] (the "Original Complaint" or "Orig. Compl."). Defendant moved to dismiss, or in the alternative transfer to the Southern District of New York pursuant to a forum selection clause in the BSA. [ECF No. 11]. The Chief Magistrate Judge in the Middle District of Pennsylvania granted Defendant's request to transfer the case to the Southern District of New York, [ECF No. 16], and subsequently the case was transferred and assigned to this Court. [ECF No. 17].

Plaintiff thereafter filed an Amended Complaint. [ECF No 26] (the "Amended Complaint" or "Amend. Compl."). Shortly thereafter, Defendant filed a Motion to Dismiss and supporting materials. [ECF Nos. 29, 30, 31]. Plaintiff opposed, [ECF No. 34], and Defendant replied, [ECF No. 38]. The Court dismissed for lack of subject matter jurisdiction, granting leave to amend. [ECF No. 39].

Plaintiff thereafter filed a Second Amended Complaint. [ECF No. 40] (the "Second Amended Complaint" or "Sec. Amend. Compl.").[2] Defendant again filed a Motion to Dismiss and supporting materials. [ECF Nos. 44, 45, 46]. Plaintiff filed an opposition and supporting materials. [ECF Nos. 47, 48]. Having obtained an extension, [ECF Nos. 49, 50], Defendant replied, [ECF No. 51].

---

[2] The Second Amended Complaint was filed late, but the parties consented to belated filing, [ECF Nos. 41, 42].

## LEGAL STANDARDS

### I.  Motion To Dismiss

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Procedure ("FRCP"), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  On this motion, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *Id.* at 678; *see also Marcus & Cinelli, LLP v. Aspen American Ins. Co.*, 158 F.4th 333, 340 (2d Cir. 2025); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  On an FRCP Rule 12(b)(6) motion, the issue is not whether the plaintiff will ultimately prevail, but whether his claim, as pleaded, is sufficient to afford him the opportunity to proceed on to the evidence.  *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). Dismissal is therefore "appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208–09 (2d Cir. 2014).  The Court's role at this stage is "'not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient.'" *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

## DISCUSSION

### I.    The Court Declines to Consider
the Original Complaint

Defendant makes a threshold argument in this case, urging the Court to consider portions of the Original Complaint despite Plaintiff's filing of the Amended Complaints.  [ECF No. 46]

("Def. Mem.") at 4–5.  Defendant argues that certain "admissions" made by Plaintiff in the Original Complaint are contradicted by the Amended Complaints.  Def. Mem. at 4–5.  Ordinarily, an amended complaint "super[s]edes the original, and renders it of no legal effect."  *Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998) (quotations omitted).  However, the Court may consider information from an original pleading for a narrow purpose and only where "a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint[.]"  *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 Civ. 0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (cleaned up, quotation omitted), *aff'd*, 356 F. App'x 535 (2d Cir. 2009).

The Second Circuit has clarified the narrowness of this exception, finding that even where allegations in the amended complaint may contradict the original complaint, "we have long held that an allegation in a superseded pleading 'ceases to be a conclusive judicial admission,' even as it may remain 'competent evidence' for submission to the factfinder."  *Oberlander v. Coinbase Global Inc.*, No. 23-184-cv, 2024 WL 1478773, at *3 (2d Cir. Apr. 5, 2024) (quoting *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2d Cir. 1929)); *see also Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 32 (2d Cir. 2002) (explaining that "[a] statement in a withdrawn complaint that is superseded by an amended complaint without the statement is no longer a conclusive judicial admission")  Further, even where "statements in an earlier complaint are determined to be inconsistent with allegations in the superseding complaint, if not repeated they are not part of the operative complaint."  *McCray v. Lee*, 963 F.3d 110, 119 (2d Cir. 2020) (explaining that, "[t]hough the prior statements may be admissible against the plaintiff in later stages of the proceedings as admissions, consideration of a motion under [FRCP] Rule 12(b)(6) is

limited to the contents of the operative complaint and documents attached to it or incorporated into it by reference")

Defendant argues that Plaintiff, in filing the Amended Complaints, directly contradicts information included in the Original Complaint, and that, therefore, the Court should consider the original pleadings under *Colliton*'s exception. Def. Mem. at 11; *see Colliton*, 2008 WL 4386764, at *6. Defendant's argument relies on certain portions of the Original Complaint that Plaintiff omitted from the Amended Complaints, specifically, an express "admission" by Plaintiff that "if [Plaintiff] terminated [Defendant,] the BSA entitled [Defendant] 'to recoup its 20% fee reduction that it had netted out for that policy year.'" Def. Mem. at 4–5 (citing Orig. Compl. ¶ 41).

While the Second Amended Complaint does not include certain excerpts of the BSA that were included in the Original Complaint, the Second Amended Complaint's substance, read in its entirety, does not contradict the claim that, if terminated, Defendant was entitled to retain the 20% fee reduction. *See* Orig. Compl; Sec. Amend. Compl. Indeed, the Second Amended Complaint expressly notes that Section D of the Broker Service Agreement provided "in the event that you terminate [Defendant] as your broker of record with respect to the renewal of any Treaty previously placed by [Defendant], all brokerage earned by Guy Carpenter from the existing Treaty shall be excluded from the calculation the BSA Retention otherwise due hereunder." Sec. Amend. Compl. ¶ 60. Additionally, the Second Amended Complaint claims "it was always [Plaintiff's] understanding that it was entitled to the BSA Retentions amounts so long as it retained [Defendant] as its broker of record for the placement and renewal of reinsurance Treaties during the Term of the BSA." Sec. Amend. Compl. ¶ 69. Indeed, Plaintiff explicitly asserts as much, noting both complaints "consistent[ly] assert[] that [Defendant] was not entitled to unilaterally withdraw the

Misappropriated Funds and the Section D of the BSA did not apply to the renewal of Treaties after the expiration of the BSA." Pl. Opp. at 12.

In *Collition*, the plaintiff "blatantly change[d] his statement" to "directly contradict[] the facts set forth in his original complaint[.]" 2008 WL 4386764 at *6 (quotation omitted). That is not the case here. The fact that Plaintiff did not repeat the precise phrasing used in the superseded complaint does not qualify the omission as a contradiction worthy of the Court's consideration on a motion to dismiss. *See id.*; *see also Tho Dinh Tran*, 281 F.3d at 32. Moreover, the BSA itself is incorporated by reference in the Original, First Amended, and Second Amended Complaints, such that it is before the Court in its entirety regardless of whether or how Plaintiff repeated or paraphrased certain excerpts. Accordingly, for purposes of the motion to dismiss, the Court will consider only allegations included in the Second Amended Complaint, which supersede all allegations in the Original and First Amended Complaints.

## II.    Plaintiff Has Adequately Pled Breach of Contract

To sufficiently plead a breach of contract under New York law, Plaintiff must allege that "(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52, 198 N.E.3d 1282, 1287 (N.Y. 2022) (citations omitted); *see also Lim v. Radish Media Inc.*, No. 22-1610, 2023 WL 2440160, at *2 (2d Cir. Mar. 10, 2023) (The elements of a breach of contract claim under New York law are "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." (citing *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017)).

8

Here, the parties do not dispute that Plaintiff has adequately pleaded that there was a contract, that Plaintiff performed under the contract, and that Plaintiff suffered damages. The only issue in dispute is whether, as a matter of law, Defendant's withdrawal of the $101,646.20 from the fiduciary account constituted a failure to perform by Defendant under the Authorization Contract or whether it was authorized under Section D of the BSA. Defendant argues that Section D of the BSA unambiguously states that once Plaintiff terminated Defendant as its reinsurance broker it was entitled to withdraw the disputed funds. Def. Mem. at 7–8. Plaintiff, on the other hand, argues that the term "termination" in this context is at minimum ambiguous because in its view Defendant was not terminated, but rather the rights and obligations under the BSA simply expired. [ECF no. 48] ("Pl. Opp.") at 7–11. Plaintiff contends, therefore, that Defendant was not terminated, Section D of the BSA was never triggered, and Defendant's withdrawal and subsequent retention of the $101,646.20 amounts to a breach of the parties' contract. Pl. Opp. at 7–11.

"[I]f a contract is ambiguous as applied to [the facts that provide the foundation of the suit], a court has insufficient data to dismiss a complaint for failure to state a claim." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 178 (2d Cir. 2004). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *W.W.W. Assocs., Inc. v. Giancontieri,* 77 N.Y.2d 157, 162, 566 N.E.2d 639, 642 (N.Y. 1990) (citation omitted); *see also Cerveceria Modelo de Mexico, S. de R.L. de C.V. v. CB Brand Strategies, LLC*, No. 23-810-cv, 2024 WL 1253593, at *1 (2d Cir. Mar. 25, 2024); *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 816 (2d Cir. 2014); *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 122 (2d Cir. 2014) ("The existence of an ambiguity is to be ascertained from the face of an agreement without regard to extrinsic evidence." (quotation omitted)).

A contract term is unambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Olin Corp. v. Am. Home Assur. Co.,* 704 F.3d 89, 99 (2d Cir. 2012) (quotation omitted). On the other hand, a contract is ambiguous under New York law "if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co.*, 773 F.3d 110, 114 (2d Cir. 2014) (quotation omitted); *see generally* 1 Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 1.02 (22nd ed. 2025). The ambiguity analysis should be constrained by normal rules of contract interpretation: "words and phrases . . . should be given their plain meaning" and a "contract should be construed so as to give full meaning and effect to all of its provisions." *Shaw Grp. Inc. v. Triplefine Int'l Corp.,* 322 F.3d 115, 121 (2d Cir. 2003) (quotations omitted).

However, "when the language of a contract is ambiguous, its construction presents a question of fact, which . . . precludes summary dismissal" on an FRCP Rule 12(b)(6) motion. *Oppenheimer & Co. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 349 (S.D.N.Y. 2013) (quotation omitted); *Eternity Glob.*, 375 F.3d at 178 (2d Cir. 2004) ("Unless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissable on the pleadings."). Basically, while a court is not "obliged to accept the allegations of the complaint as to how to construe" a contract, it "should resolve any contractual ambiguities in favor of the plaintiff" on

a motion to dismiss. *Subaru Distrib. Corp. v. Subaru of America, Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

Section D of the BSA provides, "in the event that you terminate Guy Carpenter as your broker of record with respect to the renewal of any Treaty previously placed by Guy Carpenter, all brokerage earned by Guy Carpenter from the existing Treaty shall be excluded from the calculation of the BSA Retention otherwise due hereunder." [ECF No. 45-6]. Defendant takes the position that Plaintiff terminated Defendant when it issued the McGill Letter which appointed McGill as Plaintiff's exclusive broker. Def. Mem. At 6. Plaintiff contends that Guy Carpenter was not terminated, but rather the contract simply expired without renewal. Pl. Opp. At 7–8. As Plaintiff correctly points out, the BSA contained no definitions for crucial contract terms including "termination" and "renewal." Resolving contractual ambiguities in favor of the plaintiff, as the Court must on a motion to dismiss, *Subaru Distrib. Corp.* 425 F.3d at 122, the BSA could reasonably be interpreted to mean that the McGill Letter did not amount to a termination sufficient to trigger Section D.

Therefore, the Court concludes that Section D of the BSA is ambiguous as applied to the facts giving rise to this suit, because the resolution of the dispositive question—whether the parties intended that an event such as the appointment of a new broker of record for the 2023 procurement period would qualify as a termination so as to trigger Section D—is not possible at this early stage of the litigation. Even if Defendant's interpretation were accepted, at best the contract would be ambiguous, *see Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 573 (2d Cir. 1993), and, on a motion to dismiss, the Court would be obligated to construe that ambiguity in Plaintiff's favor. *See Subaru Distrib. Corp.* 425 F.3d at 122. In other words, proper interpretation

11

of section D of the BSA is at least a question of fact that cannot be resolved at the motion to dismiss phase.

### III.    Plaintiff's Breach of Fiduciary Duty Claim is Duplicative

To claim a breach of fiduciary duty in New York, "a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Parekh v. Cain*, 96 A.D.3d 812, 816, 948 N.Y.S.2d 72, 77 (2d Dep't 2012) (quotation and citations omitted); *see also Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 807, 921 N.Y.S.2d 260, 264 (2d Dep't 2011). When an express contract exists, "being a party to a contract does not itself impose a fiduciary duty. Rather, this duty must arise from a position of trust or special confidence that imposes obligations beyond the express agreements between the parties." *Poon v. Roomorama, LLC*, No. 09 Civ. 3224 (RMB), 2009 WL 3762115, at *3 (S.D.N.Y. Nov. 10, 2009) (cleaned up, quotation omitted). "A cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." *Id*. (quotation omitted). New York courts have emphasized that "'where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory.'" *Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.*, 30 N.Y.3d 704, 711, 94 N.E.3d 456, 461 (N.Y. 2018) (quoting *Sommer v. Federal Signal Corp.*, 79 N.Y.2d, 540, 552, 593 N.E.2d 1365, 1369 (N.Y. 1992)); *see also IKB Intl., S.A. v. Wells Fargo Bank, N.A.*, 40 N.Y.3d 277, 290, 220 N.E.3d 646, 655 (N.Y. 2023) (holding that "fiduciary duty claims . . . based on defendants' failure to act as contractually required" are not maintainable as they are "duplicative of . . . breach of contract claims" (quotation omitted)).

The Court may, however, consider a separate breach of fiduciary duty claim if it is created by conduct which is "independent of the contract itself." *Mandelblatt v. Devon Stores*, 132 A.D.2d

12

162, 168, 521 N.Y.S.2d 672, 676 (1st Dep't 1987).  In determining whether claims are duplicative, the Court should "evaluate the nature of the injury, how the injury occurred and the harm it caused[.]"  *IKB Intl., S.A.*, 40 N.Y.3d at 291, 220 N.E.3d at 656 (cleaned up, quotation omitted).

Plaintiff attempts to argue that separate and apart from Defendant's obligations under the Authorization Contract, Defendant had a separate fiduciary duty, created under New York Insurance Law § 2120.  Sec. Amend. Compl. ¶ 88; Pl. Opp. at 14.  The relevant regulation, Regulation 98, provides that "[e]very person, firm, association or corporation acting as reinsurance intermediary in this State, is responsible as a fiduciary for funds received by such reinsurance intermediary, in such capacity."  N.Y. Comp. Codes R. & Regs. tit. 11, § 32.3(a) ("Regulation 98").  However, this argument fails because Plaintiff's allegations relating to the breach of fiduciary duty claim are identical to the breach of contract claim with respect to "the nature of the injury, how the injury occurred, and the harm it caused[,]" rendering the fiduciary duty claim duplicative.  *See IKB Intl., S.A.*, 40 N.Y.3d at 291, 220 N.E.3d at 656 (quotation omitted).  For example, Plaintiff alleges Defendant breached the Authorization Contract by "unilaterally withdrawing funds from the Fiduciary Account without prior notice to [Plaintiff] and without [Plaintiff's] consent to pay itself increased commissions, which were not agreed to by the Parties."  Sec. Amend. Compl. ¶ 83.  Then Plaintiff goes on to allege that Defendant breached its fiduciary duties to Plaintiff under Regulation 98 by "wrongfully diverting the funds held in the Fiduciary Account or other accounts, without any basis, for the purpose of benefiting [Defendant] at [Plaintiff's] expense, without [Plaintiff's] knowledge."  Sec. Amend. Comp. ¶ 91.  These allegations are based on and allege the same underlying conduct as the breach of contract claim.  Moreover, both claims rise and fall on interpretation of the Authorization Contract and BSA.  [ECF

No. 51] ("Reply") at 5–7.  As such, Plaintiff's breach of fiduciary duty claim is duplicative of its breach of contract claim and at this point must be dismissed.

### IV.    Plaintiff's Conversion Claim is Precluded Under New York Law

Under New York law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50, 860 N.E.2d 713, 717 (N.Y. 2006) (citation omitted).  In other words, a plaintiff states a claim for conversion by alleging that "'(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'" *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011) (quoting *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)).  In New York, however, a breach of an existing contract is "not to be considered a tort unless a legal duty independent of the contract itself has been violated[,]" and "where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory." *Dormitory Auth. of the State of N.Y.*, 30 N.Y.3d at 711, 94 N.E.3d at 460–61 (quotation and citation omitted).  A conversion claim may only succeed where a breach of contract claim exists "if a plaintiff alleges wrongs and damages *distinct* from those predicated on a breach of contract." *Ellington Credit Fund, Ltd.*, 837 F. Supp. 2d at 204 (emphasis added).  Thus, a conversion claim may not proceed parallel to a breach of contract claim if in effect, Plaintiff would be "paid twice" should they recover under both claims. *AD Rendon Commc'ns, Inc., v. Lumina Ams., Inc.*, No. 04 Civ. 8832, 2007 WL 2962591, at *5 (S.D.N.Y. Oct. 10, 2007)).

14

Plaintiff's conversion claim and breach of contract claim are predicated on the same facts. Both claims allege that Defendant improperly withdrew funds from a fiduciary account. Sec. Amend. Compl. ¶¶ 83, 100. As indicated above, Plaintiff has sufficiently plead a breach of contract claim relating to Defendant's withdrawal and retention of the funds, and therefore, the claim for conversion, which "rests on the same factual allegations as his breach of contract claim[,]" must be dismissed. *Hofmann v. Long Island Univ.*, No. 22-393-cv, 2024 WL 3262819, at *2 (2d Cir. July 2, 2024) (summary order); *see also Ellington Credit Fund, Ltd.*, 837 F. Supp. 2d at 204 ("A conversion claim may only succeed, however, if a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract."). Furthermore, Plaintiff's claim of breach of fiduciary duty under Regulation 98 is dismissed as duplicative of its breach of contract claim and thus cannot serve as the basis for a legal duty independent from the contract to save Plaintiff's conversion claim.

## V.    Plaintiff's Unjust Enrichment Claim is Precluded Under New York Law

"[I]n order to adequately plead [an unjust enrichment] claim, the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516, 973 N.E.2d 743, 746 (N.Y. 2012) (quotation and citation omitted); *see also Alpert v. M.R. Beal & Co.*, 162 A.D.3d 491, 492, 79 N.Y.S.3d 142, 143 (N.Y. App. Div. 2018) (To state a cause of action for unjust enrichment, a plaintiff must allege that it "conferred a benefit upon the defendant, and that the defendant obtained such benefit without adequately compensating plaintiff." (citation omitted)). However, a valid and enforceable contract "ordinarily precludes recovery in [unjust enrichment] for events arising out of the same subject matter." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d

15

573, 588 (2d Cir. 2006) (citing *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 516 N.E.2d 190, 193 (N.Y. 1987)).

While it is true that a plaintiff can plead unjust enrichment in the alternative if there is a "bona fide dispute as to the existence of a contract or whether the scope of an existing contract covers the disagreement between the parties," *Pauwels v. Deloitte LLP*, 83 F.4th 171, 188 (2d Cir. 2023) (quotation omitted); *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 263 (2d Cir. 1999), that is not the case here. The parties do not dispute the existence of the contract at issue. *See* Pl. Opp. at 7. Nor do they dispute that the contract is enforceable. *See* Pl. Opp. at 18; Def. Mem. at 15. Nor do they dispute that the contract at issue applies to the disagreement before the Court. *See id.*; Sec. Amend. Compl. ¶ 83. Therefore, for Plaintiff's unjust enrichment claim to survive at this stage, in tandem with its breach of contract claim, there must be facts underlying the unjust enrichment claim that fall outside of the contract. *See Pauwels*, 83 F.4th at 188. Plaintiff at once seems to concede that it pleads unjust enrichment "in the alternative" should the Court dismiss the breach of contract claim, and to assert that "misappropriated funds from a client constitutes conduct outside the scope of the contract," arguing that the unjust enrichment claim therefore should survive. Pl. Opp. at 18. Plaintiff's argument fails.

The conduct that Plaintiff alleges as the basis for its unjust enrichment claim lies directly within the scope of the parties' contract and is covered by Plaintiff's breach of contract claim. Plaintiff argues that under *Sergeants Benevolent Association Annuity Fund v. Renck*, 19 A.D.3d 107, 796 N.Y.S.2d 77 (1st Dep't 2005), a defendant retaining funds it was not entitled to "constitutes conduct outside the scope of the contract." Pl. Opp. at 18. However, unlike in *Sergeants Benevolent Association*, the Second Amended Complaint here relies on a specific term in the BSA explicitly addressing the retention or disbursement of the funds at issue. Sec. Amend.

Compl. ¶ 43.   Therefore, even though Plaintiff and Defendant disagree as to the ultimate interpretation of that BSA contract term, the conduct of retaining or disbursing the funds plainly falls well within the scope of the contract.  *See* Sec. Amend. Compl. ¶ 60.  Accordingly, Plaintiff's unjust enrichment claim is duplicative of its breach of contract claim and must be dismissed.  *See Pauwels*, 83 F.4th at 188; *see also Hofmann*, 2024 WL 3262819, at *1 (affirming the District Court's dismissal of Plaintiff's unjust enrichment claim as "entirely duplicative of his breach of contract claim" because there was no dispute over the existence of a contract (quotation omitted)).

### VI.    Plaintiff's Fraudulent Inducement and Misrepresentation Claims Are Not Pled With Sufficient Particularity

Under New York law, claims for fraudulent misrepresentation and fraudulent inducement require a plaintiff to prove: (1) a material misrepresentation or omission of fact, (2) made by the defendant with knowledge of its falsity (3) and an intent to defraud; (4) reasonable reliance on the part of the plaintiff; (5) resulting damage to the plaintiff.  *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178, 944 N.E.2d 1104, 1108 (N.Y. 2011); *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006).  "[T]he Complaint must state with particularity the circumstances of the fraud under [FRCP] Rule 9(b) and contain sufficient facts, accepted as true, to state claims for relief for common-law fraud that are facially plausible under [FRCP] Rule 8(a)(2)."  *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 516 (S.D.N.Y. 2016) (cleaned up, quotation and citation omitted).  To satisfy FRCP Rule 9(b) the complaint must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *DiMuro v. Clinique Labs., LLC*, 572 F. App'x. 27, 30 (2d Cir. 2014) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d

17

Cir. 1993)).  Under the enhanced pleading standards of FRCP Rule 9(b), plaintiffs "must not only allege that the content is false, but 'they must demonstrate with specificity why and how that is so.'"  *Travelex Currency Servs., Inc. v. Puente Enterprises, Inc.*, 449 F. Supp. 3d 385, 395 (S.D.N.Y. 2020) (quoting *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004)).  In sum, FRCP Rule 9(b) "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud."  *See U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014).

Defendant asserts various arguments for why Plaintiff's fraud and misrepresentation claims fail as a matter of law, including that the statements alleged (1) are simply promises to perform the contract, (2) are about the scope of the contract, (3) arise from the same facts as Plaintiff's breach of contract claim, (4) do not include a factual basis which gives rise to a strong inference of fraudulent intent, (5) do not plead reasonable reliance, and finally (6) are not pleaded with sufficient particularity to satisfy FRCP Rule 9(b).  Def. Mem. at 17–21.  Plaintiff counters that its fraud and misrepresentation claims are not duplicative of its breach of contract claims because it demonstrated a legal duty separate from the contract and it demonstrated a fraudulent misrepresentation collateral to the contract.  Pl. Opp. at 10.  Plaintiff further argues that it sufficiently alleged facts to support an inference of Defendant's fraudulent intent and Plaintiff's reasonable reliance.  Pl. Opp. at 20–21.  Finally, Plaintiff argues that its fraudulent inducement and misrepresentation claims are all alleged with sufficient particularity.  Pl. Opp. at 21–22.

Regardless of the other potential issues raised by Defendant concerning the sufficiency of Plaintiff's claims, the Court must dismiss Plaintiff's fraud and misrepresentation claims simply because the Second Amended Complaint is deficient under FRCP Rule 9(b) in pleading with particularity the circumstances of the fraud.  *See* Sec. Amend. Compl. ¶¶ 34–35, 111–21.  The Second Amended Complaint does not identify the individual speaker of the alleged misstatements.

18

*See id.* Further, the Second Amended Complaint does not state where or how the statements were made, whether verbally or in writing. *See id.* Nor does it allege when the statements were made. *See id.* The Second Amended Complaint contains the broad allegation that based on "Guy Carpenter's representations that HAIRE was only retaining Guy Carpenter for a fixed term . . . and the money from Guy Carpenter's reduced brokerage would be used to retain Mr. Taubenheim as a consultant . . . HAIRE agreed to retain Guy Carpenter . . . ." Sec. Amend. Compl. ¶ 35; *see also* Sec. Amend. Compl. ¶ 75. These vague and broad allegations do not "set forth the who, what, when, where and how of the alleged fraud" and are therefore insufficient to support a claim for fraudulent inducement and misrepresentation. *U.S. ex rel. Kester*, 23 F. Supp. 3d at 252.

## VII.   Motion to Strike Punitive and Consequential Damages

Defendant argues that the Court should strike Plaintiff's demand for punitive and consequential damages because their contract explicitly contains a limit of liability provision that waives the availability of such damages. Def. Mem. at 21–25. Specifically, the waiver provides that "[n]otwithstanding anything to the contrary in this Authorization in no event shall any Party to this Authorization be liable for any indirect, special, incidental, consequential or punitive damages or for any lost profits arising out of or relating to any actions or omissions by that Party." Def. Mem. at 23–24 (quoting [ECF No. 45-8]). Plaintiff does not dispute the limit of liability provision contained within the parties' contract and thus the waiver of punitive and consequential damages for its breach of contract claim. Instead, Plaintiff argues that since it is seeking punitive and consequential damages in connection with its non-breach-of-contract claims, the punitive and consequential damages are not waived and thus should remain. Pl. Opp. at 22–24.

"The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In general, "'[m]otions to strike are disfavored.'"

*Ambac Assur. Corp. v. EMC Mortg. Corp.*, No. 08 Civ. 9464 (RMB) (MHD), 2009 WL 734073, at *1 (S.D.N.Y. Mar. 16, 2009) (quoting *Roe v. City of N.Y.*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)). "Where a demand for damages is not recoverable as a matter of law, however, it may be stricken." *Phila. Stock Exch. v. Int'l Sec. Exch., Inc.*, No. 05 Civ. 5390 (NRB), 2005 WL 2923519, at *1 (S.D.N.Y. Nov. 2, 2005).

"Limitation on liability provisions routinely are agreed upon by parties to contracts and enforced by courts inasmuch as they 'represent the parties' agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed.'" *In re Lehman Bros. Holdings Inc.*, 544 B.R. 62, 70 (Bankr. S.D.N.Y. 2015) (cleaned up, quoting *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y. 430, 436, 643 N.E.2d 504, 507 (N.Y. 1994)). Such waivers will be enforced if the waiver is set forth clearly in the agreement between the parties and the agreement was "knowingly, voluntarily and intentionally" entered into. *See Coraud LLC v. Kidville Franchise Co., LLC*, 109 F. Supp. 3d 615, 624–25 (S.D.N.Y. 2015) (quotation omitted) (enforcing damages waiver provision and dismissing demand for punitive and exemplary damages). Explicit waivers of punitive and lost profit damages like the one at issue here are routinely upheld by courts. *See, e.g.*, *In re Lehman Bros.*, 544 B.R. at 70 (denying punitive and consequential damages where clause in credit agreement waived them); *E\*TRADE Fin. Corp. v. Deutsche Bank AG*, No. 05 Civ. 902, 2008 WL 2428225, at *27 (S.D.N.Y. June 13, 2008) (enforcing clause in contract that specified that no party would be "liable to the other for consequential, incidental[,] or punitive damages" (quotation omitted)); *Rubin v. Telemet Am. Inc.*, 698 F. Supp. 447, 450 (S.D.N.Y. 1988) (denying consequential damages where contract waived right to receive them).

Here, the parties do not seem to dispute that the punitive and consequential damages have been waived contractually and are not recoverable with regard to Plaintiff's breach of contract claim pursuant to the parties' contract, short of intentional tortious conduct or fraud. Therefore, the Court focuses solely on the availability of these damages for Plaintiff's unjust enrichment, conversion, breach of fiduciary duty, fraudulent inducement, and misrepresentation claims. Since none of those claims survive Defendant's motion to dismiss, the Court strikes Plaintiff's claim for punitive and consequential damages.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is DENIED as to Plaintiff's breach of contract claim and GRANTED as to Plaintiff's unjust enrichment, conversion, breach of fiduciary duty, fraudulent inducement, and misrepresentation claims. Defendant's motion to strike Plaintiff's demand for punitive and consequential damages is GRANTED. Defendant's request for oral argument is DENIED as moot.

The Clerk of Court is respectfully requested to terminate the motion pending at docket entry 44.

**SO ORDERED.**

**Date:  February 28, 2026**                               **MARY KAY VYSKOCIL**
          **New York, NY**                                      **United States District Judge**

21